UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATTHEW G.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

6:25-cv-174-JJM

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [7, 9].[2] The parties have consented to my jurisdiction [12]. Having reviewed their submissions [7, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 1,334-page administrative record [3] is presumed. On December 9, 2013, plaintiff filed an application for disability insurance benefits, asserting an onset date of October 31, 2012. Administrative Record [3] at 922. He alleged the following disabling conditions: "major" depression; trouble concentrating; anxiety; head trauma; migraine headaches; double vision; post-concussion syndrome; post-traumatic headache; and post-

[1] In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2] Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

traumatic stress disorder ("PTSD"). Id. at 95. Plaintiff's claim was initially denied on July 2, 2013. Id. at 103. A hearing was held before an Administrative Law Judge ("ALJ") in December 2016, and an unfavorable decision issued on February 10, 2017. Id. at 17-26.

Upon denial of review by the Appeals Council, plaintiff appealed to this court. Id. at 922. By Decision and Order, District Judge Lawrence J. Vilardo vacated the decision and remanded the matter to the Commissioner. Gutowski v. Commissioner of Social Security, 2019 WL 2266796, *5 (W.D.N.Y. 2019). In 2020, two more hearings were held, after which the ALJ issued another unfavorable decision dated December 29, 2020. [3] at 922. That decision was also appealed to this court, and by Decision and Order of Magistrate Judge Don D. Bush, the decision was vacated and the matter again remanded to the Commissioner. Matthew G. v. Commissioner of Social Security, 2024 WL 177342, *6 (W.D.N.Y. 2024). In that decision, Judge Bush focused on the "the ALJ's failure to weigh, or even discuss, the March 2016 opinion of vocational rehabilitation counselor Ms. Porreca". Id. at *4.

**A. The Hearing on Remand**

On November 15, 2024, Administrative Law Judge ("ALJ") Bryce Baird conducted a video hearing. Id. at 951-1015. Plaintiff was represented by an attorney. Id. at 953. Plaintiff's counsel agreed that the time period at issue was a closed period from the onset date of October 31, 2012 through March 31, 2016. Id. at 956.

At the hearing, plaintiff testified that he had an associate's degree and a driver's license. Id. at 989-90. He acknowledged ongoing struggles with homelessness and substance abuse, but he testified that he had been "clean" for 14 months. Id. at 992-93. He suffered constant headaches that potentially related to an altercation with law enforcement. Id. at 995. He

was on medication for migraines. Id. He had PTSD from an incident in which he jumped out of a window after his roommate was shot by an intruder. Id. 999-1000.

Plaintiff had previously testified that he was in counseling for his mental health. He testified that his symptoms cause memory issues, difficulty making decisions, difficulty maintaining attention, and trouble relating to others. *See* id. at 931-32. He acknowledged having substance abuse issues, but he testified that he had been sober since the alleged onset date except for one relapse in 2015. Id. at 932-33. He would exercise and go out socially. Id. at 933.

Neuropsychologist M. Kristin Price, Ph.D., testified at the hearing that plaintiff's treatment records and the medical opinion evidence demonstrated only mild to moderate limitations in mental functioning, despite evidence of a head injury, depressive disorder, anxiety disorder, PTSD, and substance abuse disorder. Id. at 962-71. Dr. Price opined that polysubstance abuse "most likely" contributed to those limitations, and that there was evidence of continuing substance abuse during the relevant period. Id. at 971. Dr. Price opined that, without substance use, plaintiff could engage in semi-skilled work but should avoid working with the public or large groups. Id. at 972. Plaintiff could work in a routine and low-pressure work environment. Id. If plaintiff were to use substances, he would have greater limitations, including a moderate-to-marked limitation in concentration, persistence, or pace. Id. at 973-74.

A vocational expert testified that an individual of plaintiff's age, education, and limitations could perform certain jobs existing in the national economy. Id. at 1003-05. However, if plaintiff were off task more than 10% per day, that would preclude competitive employment. Id. at 1005.

**B. Medical Opinion Evidence**

ALJ Baird gave "significant weight" to Dr. Price's hearing testimony due to her mental health expertise, her detailed and well-supported findings, and the consistency of her opinions with the medical evidence of record. Id. at 934.

ALJ Baird also gave "significant weight" to a June 26, 2014 opinion by consultative psychiatric examiner Janine Ippolito, Psy.D. Id. at 935 (*citing* id. at 326). Plaintiff reported to Dr. Ippolito that he drank alcohol daily and used cocaine once per week. Id. at 324. He reported being able to conduct most activities of daily living except for managing money. Id. at 325-26. He used public transportation and maintained relationships with friends and family. Id. at 326. His mental status examination was largely normal, except for a "somewhat unkempt" appearance and "fair to poor" insight and judgment. Id. at 325. Dr. Ippolito opined that plaintiff would be able to follow and understand simple directions, perform simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and relate adequately with others. Id. at 326. He would have "moderate" limitations dealing with stress, and "moderate to marked" limitations in making appropriate decision. Id. Dr. Ippolito concluded that "[t]hese limitations are due to his current substance abuse and emotional distress". Id.

The record also contained a report by neuropsychologist Jessica J. Englert, Ph.D., reflecting evaluations on March and July 2016. Id. at 334-40. Dr. Englert's report contained a narrative background of plaintiff, behavioral observations, test scores for various aspects of cognitive and emotional functioning, and a "Summary and Recommendations" section. Id. ALJ Baird observed that this report reflected judgments about the nature and severity of plaintiff's condition and included recommendations, but did not identify any specific physical or mental

vocational limitations. Id. at 936-37. Nonetheless, he gave "significant" weight to Dr. Englert's assessments of plaintiff's condition, which included findings that plaintiff had high intelligence and mild fluctuations in attentiveness, and found them consistent with a limitation to simple, routine tasks. Id. at 937.

In a June 2014 internal medicine examination, consultative examiner Samuel Balderman, M.D., opined that "the claimant's limitations are related to his substance abuse". Id. at 331. Plaintiff reported drinking six beers per day and using cocaine the previous week. Id. at 329. Plaintiff reported headaches and traumatic brain injury resulting from an altercation with police. Id. at 329. Dr. Balderman did not identify any physical restrictions. Id. at 331. ALJ Baird gave this opinion "significant, but not great" weight, concluding that the lack of any restrictions was "slightly inconsistent" with the other evidence, but that his assessment that plaintiff's limitations were related to substance abuse was consistent with the evidence. Id. at 933.

ALJ Baird gave little weight to the opinions of psychiatric consultant Hillary Earl Tzetzo, M.D. (id. at 99-100), a clinical social worker from the Erie County Department of Social Services (id. at 880-85), treating nurse practitioner Jerry Corp (id. at 907-13), chemical dependency counselor Amanda Buck (id. at 295), and vocational rehabilitation counselor Carolyn Porreca (id. at 453-59), for reasons that are not relevant to this appeal. Id. at 936-38. ALJ Baird gave no weight to a September 2019 medical source statement by consultative examiner Christine Ransom, Ph.D. (id. at 837-43), as it was based on an examination administered more than three years after the period at issue. Id. at 935.

**C. The ALJ's Decision**

On November 26, 2024, ALJ Baird issued a decision denying plaintiff's claim. Id. at 922-43. He found that plaintiff had the following severe impairments: post-concussion

syndrome with migraine headaches, anxiety disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), bipolar disorder, and poly-substance abuse disorder. Id. at 926. He found that plaintiff's mental impairments, inclusive of his substance abuse disorder, would cause "moderate-to-marked" limitations in the areas of concentrating, persisting, or maintaining pace and in adapting or managing oneself. Id. at 929. Such impairments would also cause "moderate" limitations in interacting with others, and "mild" limitations in understanding, remembering, or applying information. Id. at 928.

ALJ Baird found that, accounting for all of his impairments including substance use, plaintiff retained the residual functional capacity ("RFC") to perform "less than the full range of medium work" as defined in 20 C.F.R §404.1567(c) with certain exertional, postural, and environmental accommodations. Id. at 930. He further found that plaintiff would be limited to simple, routine tasks with little variation with no production rate or pace work, no driving, no interaction with the public, and with only occasional interaction with co-workers and supervisors. Id. Plaintiff would be off-task for "at least 15%" of the day. Id.

However, ALJ Baird found that plaintiff's substance use disorder was a contributing factor to the disability determination. Id. at 942. He found that, if plaintiff had ceased substance use, his RFC would be largely identical, except without any "off-task" restriction. Id. at 940-41.

Finally, ALJ Baird determined that, if plaintiff ceased his substance use, there were jobs that existed in significant numbers in the national economy that he could have performed during the relevant period. Id. at 941-42. Accordingly, he concluded that plaintiff was not disabled. Id. at 942.

## DISCUSSION

Plaintiff argues that ALJ Baird erred by: (1) failing to fully adopt the limitations assessed by the medical expert Dr. Price, whose opinion he gave "significant" weight; and (2) improperly interpreting the opinion of the examining neuropsychologist Dr. Englert and rejecting the more limiting portions of her opinion. [7-1] at 1.

### A. Standard of Review

In an appeal from the denial of disability benefits, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013); *see* 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019). While "the evidentiary threshold for the substantial evidence standard 'is not high', . . . is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations". Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) (citations omitted).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusions must be upheld." McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir.

2014). The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta, 508 Fed. App'x at 56.

**B. Did the ALJ properly consider Dr. Engert's "strategies"?**

Plaintiff argues that ALJ Baird erred by failing to incorporate a limitation relating to one of eight "strategies to assist with daily function" suggested by Dr. Engert's report, specifically that plaintiff "should work in brief periods of time (30 to 35 minutes) with a brief break (approximately 5 minutes) when he encouraged [*sic*] to engage in a physical task such as brief exercise". [3] at 340; [7-1] at 19-23. Plaintiff further argues that Dr. Price adopted this purported limitation in her hearing testimony, and that therefore ALJ Baird again erred by not incorporating it from her opinion. [7-1] at 15-19.[3] I disagree on both counts.

To begin with, it is well-established that the ALJ, rather than any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); *see* Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 n.3 (2d Cir. 2021). As such, the RFC need "not perfectly correspond with any of the opinions of medical sources", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022) (*quoting* Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013)).

Still, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted". Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *7. An unexplained omission of a medically supported limitation may require remand. *See, e.g.*, Jacob K. v. Commissioner of Social Security, 2021 WL 4324379, *4 (W.D.N.Y. 2021). However, "an ALJ is 'entitled to disregard favorable portions of medical

---

[3] Plaintiff makes this argument in two parts, but I consolidate them here.

opinions,' as long as [he] gives 'logical reasons to support her decision to do so'". Aponte v. Kijakazi, 692 F. Supp. 3d 257, 265-66 (S.D.N.Y. 2023).

Dr. Englert's report concluded with a section entitled "Summary and Recommendations", which contained an eight-point bullet list itemizing "a series of strategies to assist with daily function" that plaintiff "may wish to implement". Id. at 340, 976. One such strategy stated that plaintiff "should work in brief periods of time (30 to 35 minutes) with a brief break (approximately 5 minutes) when he encouraged [*sic*] to engage in a physical task such as brief exercise". Id. at 340. At the hearing, plaintiff's counsel questioned Dr. Price about Dr. Englert's neuropsychological report generally and that strategy in particular. Id. at 974. Counsel asked Dr. Price if he "agree[d] with that limitation", and she responded that "[t]hat's an appropriate transitional recommendation". Id. at 976.

An ALJ, in formulating an RFC determination, is required to account only for "physical and mental limitations that affect what [a claimant] can do in a work setting". §404.1545(a)(1). After all, an RFC determination represents "the most [a claimant] can still do despite [his] limitations". Id. By its plain language, a "strategy" that plaintiff "may wish to implement" is not an absolute limitation, and thus the ALJ need not account for it in the RFC determination. *See* Theresa M. C. v. Commissioner of Social Security, 2024 WL 1174369, *9 (W.D.N.Y. 2024) ("[e]quivocally suggested limitations need not be incorporated"); *see also* 20 C.F.R. §404.1569a (describing exertional and nonexertional limitations).

For example, Dr. Englert also recommended that plaintiff "create a distraction-free workspace . . . clear from clutter" and that he "use noise cancelling headphones" or listen to "non-lyric music" while working. Id. at 340. While implementing such strategies might

reasonably improve plaintiff's work experience, that is not the same as saying that, absent the implementation of such conditions, plaintiff would be unable to work.

This was ALJ Baird's conclusion as well. Id. at 937 ("Dr. Englert's report identifies strategies that the claimant could electively chose [*sic*] to implement 'to assist with daily functioning'. As such, Dr. Englert's recommendations are not functional limitations that have been imposed on the claimant, nor is there any suggestion that the claimant could not adequately function absent employing these recommendations. Accordingly, the identified recommendations are not restrictions"). Indeed, ALJ Baird concluded (correctly, in my view) that Dr. Englert's report could not be fully considered a "medical opinion" as it lacked any discussion of "what [the claimant] can still do despite impairment(s)" or "[his] physical or mental restrictions". Id. at 937 (*quoting* 20 CFR 404.1527(a)(1)). I find this to be a rational interpretation of the evidence, and as such, it must be upheld. *See* McIntyre, 758 F.3d at 149.

ALJ Baird's decision fully explains his analysis of Dr. Englert and Dr. Price's opinions, and he gave them significant weight to the extent that they expressed actual medical opinion. [3] at 934, 936-37. His decision was also supported by the consultative examiners' opinions, which he also gave significant weight. Id. at 933, 935. Contrary to plaintiff's contentions, he did not fail to account for any opined limitations. In the absence of this or any other obvious error, the decision should be affirmed.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [7] is denied.

**SO ORDERED**.

Dated: October 7, 2026

**/s/**
JEREMIAH J. McCARTHY
United States Magistrate Judge